IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CRIMINAL NO. 3:06-1011-CMC |
| | ) | |
| v. | ) | **OPINION and ORDER** |
| | ) | |
| Jonathan Giannone, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant's motion for relief under 28 U.S.C. § 2255. The

Government has moved for summary judgment. An Order was entered pursuant to *Roseboro v.*

*Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Defendant of the procedure and requirements for

responding to the Government's motion. Defendant has replied to the Government's motion and

this matter is ripe for resolution. For the reasons below, the court grants the Government's motion

for summary judgment in full and dismisses Defendant's motion with prejudice.

Defendant has also moved for bond pending disposition of this matter. Defendant's motion

is **moot**.

## I. BACKGROUND

On September 20, 2006, Defendant was indicted in this District on three counts of wire fraud

and two counts of aggravated identity theft, violations of Title 18, United States Code, Sections 1343

and 1028A, respectively. Defendant proceeded to trial in March 2007, represented by Thomas F.

Liotti (Liotti) and Drummond Smith (Smith) of the New York Bar, both of whom were admitted to

1

practice in this court *pro hac vice*.  On March 8, 2007, Defendant was found guilty on all five counts.  On August 22, 2007, Defendant was sentenced to 65 months' imprisonment.[1]

Defendant appealed his conviction and sentence to the Fourth Circuit Court of Appeals.  On January 7, 2010, the Fourth Circuit affirmed Defendant's conviction, but vacated his sentence, remanding for resentencing without a two-level enhancement under U.S.S.G. § 2B1.1(b)(10).[2] *United States v. Giannone*, 360 Fed. App'x 471 (4th Cir. 2010).

On March 23, 2010, Defendant appeared in this court for resentencing.  After hearing argument, the undersigned determined that the resentencing was not a *de novo* resentencing, as it was limited by the "mandate rule."  Defendant was thereafter re-sentenced to 57 months' imprisonment.[3]

Defendant again appealed to the Fourth Circuit, but voluntarily withdrew his appeal on July 6, 2010.  On September 3, 2010, he timely filed this motion for relief.[4]  The Government moved for an extension of time to respond, noting that attorneys Liotti and Smith had raised attorney-client

---

[1]This term of imprisonment consisted of 41 months' imprisonment on the wire fraud counts (to be served concurrently with each other), to be followed by 24 months' imprisonment on the aggravated identity theft counts (to be served concurrently with each other but consecutively to the sentence imposed on the wire fraud counts).

[2]The Fourth Circuit determined, and the Government conceded, that the wrong version of the federal sentencing guidelines was used at sentencing and that, as a result, a two-level enhancement under § 2B1.1(b)(10) was incorrectly added.

[3]This term of imprisonment consisted of 33 months' imprisonment as to the wire fraud counts (to be served concurrently with each other), followed by 24 months' imprisonment on the aggravated identity theft counts (to be served concurrently with each other but consecutively to the sentence imposed on the wire fraud counts).

[4]Defendant benefits from the "mailbox" rule of *Houston v. Lack*, 487 U.S. 266 (1988).  Therefore, while his motion was received and docketed by the Clerk on September 7, 2010, it appears it was given to prison officials for mailing on September 3, 2010.  *See* Dkt. #339-18 (filed Sept. 7, 2010).

privilege and declined the Government's request for affidavits of counsel addressing Defendant's assertions of ineffective assistance of counsel. On September 22, 2010, this court entered an Order directing Defendant to choose one of three options regarding his assertions of ineffective assistance of counsel and attorney-client privilege. First, Defendant could withdraw claims for ineffective assistance of counsel and therefore protect the privilege. Second, Defendant could proceed with these claims and waive his attorney-client privilege only as to the claims asserted. Third, Defendant could proceed with his motion but choose not to waive his attorney-client privilege. If he chose the third option, the claims of ineffectiveness would be addressed on the existing record, with a presumption applied that the representation was not ineffective. *See* Order (Dkt. #344, filed Sept. 22, 2010). On October 12, 2010, Defendant notified the court that he wished to waive his attorney-client privilege as to claims of ineffectiveness raised in the motion. Dkt. #356 (filed Oct. 12, 2010). Despite that waiver, Liotti and Smith have declined to provide affidavits. Nevertheless, the Government contends that on the existing record it is entitled to summary judgment. This court agrees.

## II. ISSUES RAISED AND WITHDRAWN/CONCEDED

Defendant raised four Grounds for relief in his motion. In his response to the Government's motion for summary judgment, he withdraws portions of Ground One (ineffective assistance of counsel) relating to Guidelines loss calculations under U.S.S.G. § 2B1.1(b)(1) and the alleged failure to request a curative jury instruction regarding 404(b) evidence contained in chat transcripts introduced by the Government during trial, and Ground Two (Denial of Right to Counsel). Resp. in Opp. at 10, 16 (Dkt. #373, filed Feb. 1, 2011). Defendant also concedes that his Third Ground for relief was raised and decided against him on direct appeal and is therefore not cognizable. *Id*.

at 10.  Therefore, as to those claims, the Government is entitled to summary judgment and they are dismissed with prejudice.

### III.  REMAINING GROUNDS FOR RELIEF

#### A.  GROUND ONE – INEFFECTIVE ASSISTANCE OF COUNSEL

#### 1.  STANDARD

The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient,"  *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant.  *Id*.  As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance."  *Id*. at 687.  The question whether counsel's performance was deficient may only be answered by viewing counsel's actions or decisions in the light of all surrounding circumstances at the time the decision was made, not in the artificial light of hindsight.  *See Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).  A reviewing court should not second-guess defense counsel's tactical decisions.  *See McDougall v. Dixon*, 921 F.2d 518, 537-39 (4th Cir. 1990), *cert. denied*, 501 U.S. 1223 (1991).  In attempting to establish ineffective assistance of counsel, Defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as this court applies a "heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 689-91.  The purpose of ineffectiveness review is not to grade counsel's performance. *See Id*. at 697.  This principle recognizes that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another."  *Id*. at 693. Thus, in conducting any review of attorney performance, a court must deal with the obvious point that in every case, counsel could have done something more or something different.

Omissions are inevitable. The issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp*, 483 U.S. 776, 794 (1987). "The test . . . is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is . . . whether what they did was within the 'wide range of reasonable professional assistance.'" *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc) (citations omitted).

To this end, there is a strong presumption of competence coupled with the wide discretion that is accorded to attorneys in tactical matters. As noted by the Fourth Circuit:

> It is by now well-established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without first obtaining the consent of the defendant. *See Florida v. Nixon*, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). "Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998).

*United States v. Chapman*, 593 F.3d 365, 367-68 (4th Cir. 2010). Thus, counsel cannot be judged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 169 (1986). Given this strong presumption in favor of competence, Defendant's burden of persuasion is a heavy one. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

In addition to showing ineffective representation, Defendant must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In certain cases, it is not necessary to determine whether counsel's performance was deficient if the claim is readily dismissable for a lack of prejudice. *Id*. at 697.

### A. PRETRIAL PROCEEDINGS

#### 1. FAILURE TO FILE MOTION TO DISMISS RE: SPEEDY TRIAL ACT

Defendant contends counsel was ineffective in failing to move for dismissal of the Indictment based upon a violation of the Speedy Trial Act. The Government concedes that the Indictment was obtained several days beyond the thirty-day period provided for in 28 U.S.C. 3161(b),[5] but that Defendant cannot establish prejudice from this failure to comply with the statutory deadline. The undersigned agrees.

Title 28, United States Code, Section 3161(b) provides that an individual shall be charged with an information or indictment "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." The sanction for a § 3161(b) violation is set forth in § 3162(a)(1): "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . . , such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 28 U.S.C. § 3162(a)(1). A § 3162(a)(1) dismissal may be "with or without prejudice," as neither is "the presumptive remedy for a Speedy Trial Act violation." *United States v. Taylor*, 487 U.S. 326, 326 (1988). In *Taylor*, the Supreme Court observed that dismissals with prejudice are not warranted absent a showing of more than "an isolated unwitting violation" of speedy indictment by the prosecutor. 487 U.S. at 339. Dismissals with prejudice generally require a showing of a "truly neglectful attitude," "bad faith," a "pattern of neglect," or other serious misconduct, *id*. at 338-39, as well as actual prejudice to the defendant, *id*. at 340-41.

---

[5]Defendant was arrested on August 16, 2006, and was indicted on September 20, 2006.

The Government indicted Defendant thirty-five (35) days after his arrest on a criminal complaint, mere days after the statutory deadline expired.[6]  Assuming ineffectiveness, Defendant argues prejudice resulted as "the disposition of this case would have been a dismissal and not a conviction."  Mem. Supp. at 7 (Dkt. #339-8, filed Sept. 7, 2010).  However, Defendant makes no showing of "truly neglectful attitude," "bad faith," a "pattern of neglect," or other serious misconduct, *Taylor*, 487 U.S. at 338-39, on the part of the Government, nor that a dismissal would have been with prejudice.[7]

Therefore, as Defendant has failed to establish that the dismissal would have been with prejudice, he has failed to establish that he is entitled to relief on this claim.[8]

### 2. FILING OF PRETRIAL MOTION WITH PROTECTED INFORMATION

Defendant next asserts counsel was ineffective in filing a pretrial "omnibus" motion and declaration on December 11, 2006, which contained statements he contends were protected under

---

[6]Excluded from the calculation of the 30-day time period were Defendant's initial appearance on August 16, 2006, in New York, and his subsequent appearance in this District on September 6, 2006.  18 U.S.C. § 3161(h)(1).

[7]Section 3162(a)(1) lists the specific factors that a court must consider when deciding whether to dismiss a case with or without prejudice due to a Speedy Trial violation: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." "[A] district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *Taylor*, 487 U.S. at 336.  The Supreme Court has held that "the presence or absence of prejudice to the defendant" is also "relevant for a district court's consideration."  *Id.* at 334.

[8]Defendant makes an additional claim regarding counsel's alleged ineffectiveness here, arguing that counsel was ineffective in failing to move to dismiss Counts 2 and 5 of the Indictment because (he contends) if the Indictment had been dismissed, no predicate offenses would exist on which Counts 2 and 5 were based.  However, all counts would be subject to the same analysis. Therefore, this contention fails as well.

attorney-client privilege and which he avers he did not authorize counsel to reveal.[9] Defendant

maintains that this violation of attorney-client privilege rose to a violation of the Sixth Amendment.

Specifically, Defendant argues that as a result of the violation of the privilege:

> 1) the Government "learned of Movant's association with Christopher Branca," Mem. Supp. at 14 (Dkt. #339-8);

> 2) the Government "learned of a second witness . . . unfavorable to Movant . . . Christopher Cutler," *id.*;

> 3) the Government was allowed to use excerpts of Liotti's declarations at trial, which also resulted in a "consciousness of guilt" jury instruction, *id.* at 14-15;

> 4) that he did not authorize Liotti to attach a copy of the "chat transcript" between Defendant and "Elevenonee" to the declaration; and

> 5) that he was "enhanced [at sentencing] under U.S.S.G. § 3C1.1 based on the filing of counsel's declaration." *Id.* at 19.

The Government argues in opposition that counsel's attachment of the chat transcript to the omnibus

motion was a reasonable tactical decision but even if counsel was ineffective in revealing privileged

information, Defendant has failed to establish prejudice.

Attorney-client privilege protects confidential communications between the client and the

attorney. The privilege may be lost when a client gives information to an attorney for the purpose

of committing or furthering a crime or fraud. *See In re Grand Jury Subpoena (U.S. v. Under Seal)*,

884 F.2d 124, 127 (4th Cir. 1989). Generally, the crime-fraud exception exists when (1) the client

was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel

to further the scheme, and (2) the documents containing the privileged materials bear a close

---

[9]Defendant indicates in his declaration that he "did not authorize the publication" of "many statements made by me under the impression that they would be protected by attorney-client privilege." Decl. in Supp. at 11 (Dkt. #339-1, filed Sept. 7, 2010). Defendant avers that "these statements include paragraphs: 1, 5, 6, 7, 8, 9, 11, 13, 14, and 17 of the 'Liotti Declaration'." *Id.*

relationship to the client's existing or future scheme to commit a crime or fraud.  *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999).

Defendant admitted to Special Agent Bobby Kirby in a post-trial interview that he fabricated the chat by creating an "auto-response 'bot' that replied with preprogrammed responses to messages sent from a computer.  [Defendant] was thereby able to make it appear that he was engaging in a live chat with another person."  Decl. of Special Agent Bobby Kirby at 1-2 (Dkt. #367-2, filed Dec. 20, 2010).  Defendant offers no evidence to contradict Special Agent Kirby's declaration that he perpetrated a fraud on this court when he "created" the chat transcript which counsel then attached to the omnibus motion.[10]  Therefore, its attachment to the motion did not violate any attorney-client privilege, and any information contained in the transcript was not privileged.

---

[10]In an earlier filing with this court, Defendant averred that he did "not ever recall to admitting to anything criminal.  Including the chat in question."  Corrected Affidavit of Jonathan Giannone at para. 14 (Dkt. #196, filed Aug. 28, 2008).  This averment does not specifically contradict Kirby's affidavit.

9

Assuming counsel's ineffectiveness, however, Defendant cannot establish prejudice.[11]  As to Branca, the Government was aware of a link between Defendant and Branca well before Defendant was indicted.  *See* Trial Exhibits #11, 12 (Dkt. #351 at 60-69, filed Oct. 1, 2010).  In addition to chat transcripts from 2005 wherein Defendant specifically speaks of Branca, the Government also knew of an additional connection between Defendant and Branca prior to Defendant's indictment.  *See* Attach. G to Dft's M. for New Trial (Dkt. #169-2, filed July 14, 2008) (indicating a copy of the police report regarding arrest of Branca and Defendant was released to the United States Secret Service by the Costa Mesa Police Department on August 14, 2006).  Therefore, the Government knew of a connection between Defendant and Branca absent any revelation by counsel.

---

[11]Defendant first avers in support of his claim of ineffectiveness that "[p]rior to receiving the government's appeal brief and supplemental appendix on June 4, 2009, I never reviewed or read any part of attorney Liotti's omnibus motion or associated declaration."  Dkt. #339-1 at para. 56 (filed Sept. 7, 2010).  However, even assuming Defendant did not "review or read" the motion prior to its filing, the record establishes Defendant was well aware of counsel's filings and assertions well before June 4, 2009.  For example, in a letter dated January 17, 2007, Defendant's attorney indicated that Defendant's reply to the Government's response to that very motion "was completed and *reviewed by [Defendant]* this afternoon."  Letter from Thomas F. Liotti at 2 (Dkt. #51, filed Jan. 18, 2007) (emphasis added).  This Reply contained several references to the material and assertions contained in the original motion and declaration.  Therefore, at the very least, Defendant was aware of the arguments and purported unauthorized revelations no later than January 17, 2007.  Additionally, in his declaration in support of his § 2255 motion, Defendant avers that "[o]n January 23, 2007, I met with attorney Liotti and attorney [Drummond] Smith at the Law Offices of Thomas F. Liotti.  Attorney Liotti provided me with a copy of the transcript of the January 19th [2007] hearing."  *Id*. at para. 68.  In this hearing, there was pointed discussion regarding the omnibus motion and Liotti's declaration.  It is highly unlikely that counsel did not explain the substance of the hearing, or that Defendant did not read the transcript which had been given to him.  Moreover, the laptop computer on which Defendant conducted his "surreptitious chat" was produced at a pretrial conference held before this court on February 16, 2007.  *See* Tr. of Pretrial Hearing (Dkt. #89, filed Apr. 20, 2007).  It is not feasible that Defendant was unaware of the contents of the motion and its attachments (including Liotti's declaration) when he assisted counsel in transporting the laptop computer from New York to Columbia for this hearing, or while he stood mute during counsel's argument in open court.

10

As to Cutler, Defendant argues that absent Liotti's declaration, "[t]he government would never have learned of Cutler and thus he would have not been a witness against Movant." Mem. Supp. at 16 (Dkt. #339-8). However, Cutler was known to the Government prior to Defendant's indictment. A criminal complaint filed in this District on August 3, 2006, indicated that Cutler had traveled to Columbia, South Carolina, on January 20, 2006, for a "carding" trip with Branca and another individual. *See* D.S.C. Cr. No. 3:06-856, *United States v. Christopher Cutler*, Aff. of Bobby J. Kirby at 6-7 (Dkt. #1, filed Aug. 3, 2006). Not only was the Government aware of Cutler, it was in possession of information that linked Cutler and Branca no later than August 3, 2006. Therefore, the record refutes Defendant's position.

On March 5, 2007, this court granted the Government's motion in limine to use excerpts of Liotti's declarations during the trial of this matter.[12] Defendant maintains he was prejudiced because "this court allowed the government to use the Liotti declaration against Movant [and] the government requested and successfully obtained a consciousness of guilt jury instruction." Mem. Supp. at 14-15 (Dkt. #339-8). However, the excerpts sought to be used by the Government in its case in chief were never introduced into evidence. Therefore, Defendant's contention on this issue is without merit.[13]

---

[12]The Government moved to use excerpts of Liotti's declaration filed December 11, 2006, as well as excerpts of a declaration filed in the Fourth Circuit Court of Appeals. *See* Dkt. Nos. 66, 67.

[13]Nor has Defendant shown the consciousness of guilt charge was based on the excerpts from Liotti's declarations, which were never introduced.

As to the chat transcript, Defendant's assertions fail for several reasons. First, assuming the authenticity of the chat,[14] the "chat" was (allegedly) a "conversation" with a third party ("Cutler"), not counsel. Therefore, such "publication" to a third person ("Cutler") would have removed any existing privilege. In other words, a conversation between Defendant and counsel would have been privileged, but a conversation between Defendant and "Cutler," with counsel standing in the room,[15] would not have been – and was not – privileged.

Second, as discussed above, the "chat transcript" was fraudulent. Not only did Defendant admit this to Special Agent Kirby, but evidence at trial proved it to be fraudulent. *See* Sentencing Tr. at 61-62 (Dkt. #120). Additionally, in a pre-sentencing letter to the court, counsel argued that

> while Jonathan *has admitted to his actions*, no portion of [the obstruction of justice statute] can be applied against him. His proffer after trial is *that he acted alone . . . . He did not intend to obstruct justice.* All he intended to do . . . was to defend himself against these charges. He had no idea that his actions could be interpreted as a violation of federal law.

Letter of Thomas Liotti dated August 20, 2007 (Dkt. #99, filed Aug. 22, 2007) (emphasis added).

Finally, Defendant maintains he suffered prejudice because he was enhanced at sentencing under § 3C1.1 because of counsel's declaration. This contention is without merit. The court applied

---

[14]Defendant allegedly conducted the chat with the "permission" of the Pretrial Services officer who was supervising his pretrial release in New York. *See* Liotti Declaration at para. 5 (Dkt. # 37, filed Dec. 12, 2006). Such "permission" appears to have been in violation of the conditions of his bond, as the Order Setting Conditions of Release indicates that he was to have "no internet access," not that permission for such could be granted at the discretion of a Pretrial Services Officer. *See* Order Setting Conditions of Release at 1 (Dkt. #12, filed Sept. 6, 2006).

[15]Defendant's declaration in support of his § 2255 details his preparation and execution of the "chat" in the presence of counsel. *See* Decl. of Jonathan Giannone at 9-10 (Dkt. #339-1, filed Sept. 7, 2010). Additionally, Liotti's declaration filed in support of the change of venue motion maintains that the "online chat was witnessed by, [sic] Drummond Smith, Esq., an associate at The Law Office Of Thomas F. Liotti, Jonathan's New York attorney." Decl. of Thomas F. Liotti at ¶ 5 (Dkt. #37, filed Dec. 12, 2006).

the concept of enhanced relevant conduct because Defendant created the fraudulent "chat transcript" (not because counsel filed a declaration), was charged by Boston, Massachusetts, authorities with Larceny over $250 while on pretrial release, and because he called Boston authorities and posed as a Secret Service agent to obtain information. *See* Sentencing Tr. at 60-62 (Dkt. #120, filed Jan. 7, 2008).

Defendant argues in the alternative that counsel was ineffective in failing to file a Notice of Alibi and attach a copy of the chat transcript. Defendant contends that he thereafter "could have been able to withdraw this defense and the government would be prohibited from using it under Fed.R.Crim.P. 12.1(f) against Movant." Mem. Supp. at 20 (Dkt. #339-8).

An alibi is a "defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (quoting Black's Law Dictionary 79 (8th ed. 2004)). The "chat transcript" does not specifically "place the [D]efendant in a location other than the scene of the crime at the relevant time." In other words, the "chat" provides no evidence of the physical impossibility of Defendant committing the crimes charged in Counts 1 through 5 of the Indictment, which were alleged to have occurred on May 26, 2005 (Counts 1 and 2); May 31, 2005 (Count 3); and June 5, 2005 (Counts 4 and 5). The "chat" only purported to offer evidence relating to money in Defendant's bank account (that is, an explanation for the money deposited by the FBI for the "dumps" provided by Defendant) and Defendant's contention that someone other than he committed the crimes. Accordingly, this argument is without merit.

There can be no ineffectiveness for the disclosure of false, non-privileged information. Moreover, even if the information was not false, it was not privileged, nor would the "chat

transcript" provide a proper alibi defense. Therefore, Defendant has failed to show counsel was ineffective, and the Government is entitled to summary judgment on this claim and it is dismissed with prejudice.

### 3. OTHER – PRETRIAL

Defendant also contends that he received ineffective assistance of counsel due to counsel's absence from a pretrial hearing on January 19, 2007, and that Liotti interfered with his right to counsel of choice. These claims are without merit. Defendant was represented at the January 2007 pretrial conference by local counsel, Jack Swerling, and the matter for decision had been fully briefed by the parties. As to his claim that Liotti interfered with his right to be represented by counsel of his choice, this court reviewed the options with Defendant during an ex parte hearing prior to trial. *See* Tr. of Pretrial Hrg., Dkt. #89 (filed Apr. 20, 2009). Defendant indicated on the record after discussion with this court that he was satisfied with and wished to proceed with Liotti as counsel. Therefore, as these claims are without merit, the Government is entitled to summary judgment, and they are dismissed with prejudice.

### B. TRIAL PHASE

### 1. EXHIBITS

Defendant's next claim is that counsel was ineffective in stipulating to the admission of certain exhibits during trial. Defendant contends these exhibits were otherwise inadmissable. Defendant maintains that had counsel objected to their admission, these exhibits would have been excluded and he would have been acquitted.

Under Federal Rule of Evidence (FRE) 803(6), business records are an exception to the hearsay rule and are admissible as long as they satisfy certain requirements. Rule 803(6) references

Rule 902(11), which permits authentication of these records by certification of the custodian or other qualified person, and thus eliminates the need for foundation testimony at trial. Additionally, Rule 902(11) includes a notice provision, directing that a

> party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parteis, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Fed. R. Evid. 902(11).

The Government argues that it provided the exhibits in question to Defendant during discovery. However, as correctly noted by Defendant, merely providing access to business records through discovery does not satisfy the noticing requirement of FRE 902(11). *See United States v. Thomas*, 128 Fed. App'x 986 (4th Cir. 2005). There is no dispute, however, that a set of the exhibits was provided to defense counsel on March 4, 2007, before the trial began. Therefore, to the extent Defendant argues the exhibits were inadmissible due to an alleged failure to provide notice under Rule 902(11), this contention fails. *See*, *e.g.*, *United States v. Thomas*, 128 Fed. App'x. 986, 992 n.2 (4th Cir. 2005) (finding sufficient 902(11) notice when exhibits provided on a Friday when trial began Monday).

As to certification, a review of the record reveals that no Rule 902(11) certification was attached to American Express records (Exhibits 2b, 5b, 10a, 10b, 13a, 15d, 17b, 18b, and 20c) and records from Thrifty Car Rental (Exhibits 5a, 15a, 18a, and 20b).

Counsel agreed to the exhibits' admission on the first day of trial. Assuming these exhibits were inadmissible and that counsel was ineffective in agreeing to these documents' entry into evidence, Defendant cannot show prejudice. The exhibits in question were supportive of the Government's overall case in chief. However, they were not, in and of themselves, so material to

15

the Government's case that their exclusion would have led to Defendant's acquittal.[16]  Therefore, as Defendant has failed to establish that the results of the proceeding would have been different based on counsel's presumed ineffectiveness, the Government is entitled to summary judgment as to this claim.[17]

### 2. FAILURE TO IMPEACH WITNESS WITH POLICE REPORT

Defendant maintains that counsel was ineffective in failing to use a police report to impeach Branca, who was a cooperating Government witness.  The report in question was of a 2004 arrest of Branca and Defendant in Costa Mesa, California for a "carding" incident.  The report indicates Branca told Costa Mesa law enforcement that he and Defendant purchased the fraudulent gift cards from an unknown third party.  However, at Defendant's trial, the Government indicated Branca was prepared to testify that Defendant was the source of the stolen gift cards.  This court limited Branca's testimony to his own illegal activities while in California, and to Defendant's presence with him on the trip.  The Government argues that counsel's decision not to cross-examine Branca using the police report was a reasoned tactical decision because cross-examination with the report risked eliciting Branca's inculpatory statement regarding Defendant.

---

[16]Indeed, several of these exhibits merely provided support for other properly-admitted business records.  For example, Exhibit 2b (an American Express record) supported a properly-admitted FleetOne Premiere banking statement.  Exhibit 20b (Thifty Car Rental statement) supported a properly admitted United Airlines exhibit (20a).

[17]Defendant disputes that notice was provided as to bank records (Bank of America) and travel records (United Airlines and Southwest Airlines).  However, Defendant has provided no support for his contention, other than his own self-serving assertions, that counsel did not receive these notices on March 2, 2007.  Additionally, as noted above, these exhibits were included in the copy of trial exhibits which was provided to defense counsel on March 4, 2007.  Therefore, the court finds that the Government provided proper notice under FRE 902(11) as to these documents.

Counsel cannot be judged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 169 (1986). Defendant provides no evidence of how this action was anything other than "sound trial strategy," and has failed to establish resulting prejudice. Therefore, the Government is entitled to summary judgment on this claim, and it is dismissed with prejudice.

### 3. FAILURE TO PRESENT CASE

Defendant contends that counsel was ineffective in failing to present a defense case. Defendant contends that counsel should have called Brett Johnson as a defense witness, should have "allowed" Defendant to testify, and should have called a computer forensic expert Defendant indicates had been hired by the defense.

As to Johnson, Defendant argues that "[w]e know from Johnson's letter what his testimony would have been and it clearly contradict[s] a lot of the statements made by the government at trial." Dft's Resp. in Opp. at 24 (Dkt. #373, filed Feb. 1, 2011). However, a defense attorney's decision not to call a witness is a "virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). Even assuming ineffectiveness, Defendant's claim here that he is certain of the contents of Johnson's testimony is unsupported by an affidavit from Johnson and, therefore, is mere speculation.

Defendant also argues counsel was ineffective in failing to call a computer forensics expert who purportedly had been hired and who had allegedly produced a report indicating that the infamous "chat" in question had occurred. However, Defendant has produced no evidence as to what the expert's testimony would be (other than his own self-serving assertions) or how this expert's testimony (assuming that the testimony would be that the "chat" in question occurred)

17

would have so altered the results of Defendant's trial that prejudice resulted from a failure to offer him as a witness.[18]

As to counsel's alleged failure to allow Defendant to testify, this court advised Defendant of his right to testify, specifically advising Defendant that the decision whether to do so or not was his decision. Defendant chose not to testify. Despite any purported predictions by defense counsel as to the weakness of the Government's case, the decision not to testify was Defendant's alone. Defendant was well aware of the Constitutional right he chose to exercise, and therefore cannot hide behind any alleged ineffectiveness here.

Therefore, Defendant has failed to show that counsel was ineffective in failing to present a defense case. Accordingly, the Government is entitled to summary judgment on this claim, and it is dismissed with prejudice.

### 4. OTHER

Defendant also contends that counsel was ineffective in failing to move for a mistrial relating to an alleged sleeping juror. The Government contends that this was a reasoned tactical decision, and that even if (as Defendant contends) he requested that counsel move for mistrial, this does not constitute ineffective assistance of counsel. Gov't Mem. Supp. at 33 (citing *United States v. Chapman*, 593 F.3d 365 (4th Cir. 2010)). Defendant offers no further response to the Government's argument. The court finds the Government is entitled to summary judgment on this claim and it is dismissed with prejudice.

---

[18]Indeed, the value of any testimony that the "chat" in fact occurred is undercut by Defendant's admission to Special Agent Kirby that the chat was fabricated.

18

**C. SENTENCING**

Defendant argues counsel was ineffective in advising him to be completely honest about his (Defendant's) criminal history during his interview by a United States Probation Officer. Defendant contends that counsel was ineffective in "failing to advise Movant that he retained his Fifth Amendment right during the presentence interview." Mem. Supp. at 49 (Dkt. #339-8). Defendant maintains that his revelation of a prior State of New York youthful offender conviction affected the calculation of his criminal history, thereby increasing his sentence. Defendant argues this "loss of liberty" constituted prejudice. In opposition, the Government attaches a letter from Probation Officer Andrea M. Vaughn (Vaughn) indicating that the South Carolina United States Probation Office (USPO) possessed the information by September 5, 2006, when it received the Pretrial Services (PTS) Report prepared by the USPO in the Eastern District of New York. *See* Attach. #4 to Gov't Resp. in Opp. (Dkt. #367-4, filed Dec. 20, 2010). In response, Defendant contends that he was not represented by counsel during the time of the initial interview in New York, and had he not revealed the conviction, the USPO would not otherwise have known of it.

Defendant cites *United States v. Mitchell*, 526 U.S. 314 (1999), to support the proposition that he retained a Fifth Amendment right not to discuss matters which "further incriminate the defendant." Mem. Supp. at 49 (Dkt. #339-8). The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U .S. Const. amend. V. This privilege "protects a person . . . against being incriminated by his own compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409 (1976). The privilege "applies only when the accused is compelled to make a *testimonial* communication that is incriminating." *Id*. at 408 (emphasis in original); *See also Evans v. City of Chicago*, 513 F.3d 735, 743 (7th Cir. 2008)

("'To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have some tendency to subject the person being asked the question to criminal liability.'") (citation omitted).

It is correct that having not testified during his trial, Defendant retained a Fifth Amendment right to remain silent regarding his involvement with the criminal offense for which he had been convicted. Additionally, this court could not have drawn adverse inferences against him at sentencing based upon his silence.[19]

However, Defendant's contention that the USPO "would not have been able to discover Movant's prior youthful offender conviction" without his volunteering the information is unsupported. While a records check through the National Crime Information Center (NCIC) may not have revealed the underlying details of Defendant's conviction, the report obviously showed the existence of a conviction. There is no support for the idea that upon further official inquiry, the Probation Officer would not have been able to ascertain details of the conviction and sentence.

Accordingly, the Government is entitled to summary judgment on this claim and it is dismissed with prejudice.

## D. APPEAL

Defendant maintains counsel was ineffective during the presentation of his direct appeal. Defendant argues counsel was ineffective in failing to present the broad argument of the application

---

[19]In *Mitchell*, the Court held that a guilty plea does not totally waive a defendant's self-incrimination privilege at sentencing as it relates to both the underlying relevant conduct and other unrelated criminal activity that poses the threat of additional punishment. The Court reasoned that "a defendant may have a legitimate fear of adverse consequences from further testimony . . . [and] any effort . . . to compel [that testimony] . . . at the sentencing hearing clearly would contravene the Fifth Amendment." *Mitchell*, 526 U.S. at 326 (quotation omitted).

of the wrong Guideline Manual at his sentencing. Defendant contends that if counsel had argued this position, he would have received a *de novo* resentencing. Defendant cites *United States v. Fields*, 552 F.3d 401 (4th Cir. 2009), in support of his contention. The Government argues in opposition that this was the very argument presented on appeal.

In general, once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution. *See Stamper v. Baskerville*, 724 F.2d 1106, 1107 (4th Cir. 1984). This "mandate rule" "is a more powerful version of the law of the case doctrine and is based on 'the principle that an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system.'" *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005) (quoting 18B Charles Alan Wright, Arthur B. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.3 (2d. ed. 2002)).

The mandate rule is a "specific application of the law of the case doctrine." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir.1993) (internal quotation marks omitted), and "prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007). Exceptions include when "controlling legal authority has changed dramatically," when "significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light," and when "a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *United States v. Aramony*, 166 F.3d 655, 662 (4th Cir.1999) (internal quotation marks omitted). Notably, "[a] court has the power to revisit prior decisions of its own . . . *in any circumstance*" where "the initial decision was clearly erroneous." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (emphasis added).

Accordingly, the mandate rule restricts the district court's authority on remand.  First, "any issue conclusively decided by [the appellate court] on the first appeal is not remanded," and second, "any issue that could have been but was not raised on appeal is waived and thus not remanded." *United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir.2002); *see also S. Atl. Ltd. P'ship of Tenn. v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) (stating that the mandate rule prohibits district courts from "reconsider[ing] issues the parties failed to raise on appeal").  "[U]nder the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories."  *Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.,* 510 F.3d 474, 481 (4th Cir. 2007).

In this case, the Fourth Circuit's remand for resentencing was limited in nature.  The court remanded this matter for resentencing "without the two-level enhancement under U.S.S.G. § 2B1.1(b)(10)."  *United States v. Giannone*, 360 Fed. App'x 473, 479 (4th Cir. 2010).  Therefore, unlike in *Fields*, *supra*, the Fourth Circuit remanded the matter with a specific directive.  *See*, *e.g.*, *United States v. Bell*, 5 F.3d 64, 65-67 (4th Cir. 1993)  (remand instructed district court to sentence defendant within 87-108 month guideline sentence).

Even assuming counsel's ineffectiveness, Defendant has failed to establish the necessary prejudice associated with this claim.  Defendant contends he was prevented from "raising certain arguments" at resentencing.  Mem. Supp. at 53 (Dkt. #339-8).  However, Defendant does not present any evidence of what "arguments" he was precluded from making which would have necessarily resulted in him receiving a lesser sentence.

Therefore, as Defendant has failed to establish prejudice as to this claim, the Government is entitled to summary judgment, and it is dismissed with prejudice.

22

### E. Conclusion – Ineffective Assistance of Counsel

For all of the above reasons, the Government is entitled to summary judgment on Ground One, and it is dismissed with prejudice.

### B. Ground Four – Actual Innocence – Criminal History

Ground Four of Defendant's motion is that he is "actually innocent" of certain criminal history points assessed against him. Defendant has provided no information to this court that he is actually innocent of any underlying conviction. Thus, even if this claim was cognizable in this motion, it fails.

Therefore, the Government is entitled to summary judgment and this Ground is dismissed with prejudice.

### IV. Conclusion

For the reasons discussed above, the Government is entitled to summary judgment *in toto* and this motion is dismissed with prejudice.

### Certificate of Appealability

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676,

23

683 (4th Cir. 2001).  In this case, the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is **denied**.

    **IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 26, 2011